**In re GUARDIANSHIP ESTATES of Lewis James KAUFMAN et al.**

**No. 17116.**

Court of Civil Appeals of Texas.

Dallas.

June 21, 1968.

C. A. Mattay, Dallas, for appellant.

John J. Orvis, Asst. Dist. Atty., Dallas, for appellees.

PER CURIAM.

This is an appeal from a judgment of the district court denying the approval of an annual accounting filed in the Probate Court of Dallas County, Texas by Marlene A. Kaufman Brooks, Guardian of Lewis James Kaufman, Douglas Hazen Kaufman, Stephanie Ann Kaufman, Lawrence William Kaufman and John Gerald Kaufman, Minors, and heard by the district court on appeal from the probate court pursuant to Rules 332–338 of Vernon's Texas Rules of Civil Procedure.

The facts are undisputed. The father of the minor children was killed in an airplane crash. Action for damages was instituted in the District Court of Harris County, Texas by the surviving widow, acting individually, and on behalf of the minor children. By virtue of a settlement agreement each of the minor children was awarded sums ranging from $10,500 to $11,750, depending upon the age of the children. The surviving widow was awarded the sum of $20,000. Marlene A. Kaufman Brooks, the natural mother of the minor children, was appointed guardian

of the persons and estates of the minors by the Probate Court of Dallas County, Texas and in such capacity received the various sums of money due to the respective minors from the Clerk of the District Court of Harris County, Texas on August 30, 1962. Each year thereafter the guardian filed her annual accounting which recited various expenditures such as costs, bond premiums, support and maintenance, etc., and each of said annual accountings was duly approved by the probate court. However, on October 20, 1967 the guardian filed her annual accounting for the period between October 31, 1966 and October 15, 1967. This accounting revealed various expenditures from the accounts of the minors for maintenance, education, medical and dental expenses, etc. It also revealed disbursements for court costs, bond premium, and bank service charges. In the report the guardian requested the court to permit the various payments of expenses of administration and also to allow the withdrawal of certain funds for maintenance and support. The guardian requested a reasonable attorney's fees for the presentation of the accounting.

Following hearing of the application the probate judge denied the approval of the annual accounting, holding that the natural mother possessed funds of her own sufficient to allow her to support and educate her children without expending the estates belonging to the wards, and that it was her legal obligation to do so. The court allowed a $250 attorney's fee to the attorney representing the guardian, to be paid out of the estates. The guardian perfected an appeal to the district court and there requested the court to order approval of her annual account and to allow the expenditure of funds for the support, maintenance and education of the wards out of their estates, as well as to allow the payment of attorney's fees and other administration costs.

Following a hearing before the court, without a jury, judgment was rendered denying guardian's application and again expressly finding that the natural mother was financially able to support and maintain her children as she was legally required to do. The district judge also directed that no further application is to be made or considered in this matter for a period of one year during which time the estates of the minors "are to be in peace and at rest and in quiet for at least one year." The court specifically ordered that the minors' estates funds are frozen as to principal and interest for one year with no withdrawals to be permitted.

OPINION

The record reflects a rather unusual situation. Rule 337, T.R.C.P., expressly provides that the case on appeal from the probate court shall be tried *de novo* in the district court and governed by the same rules and procedure as other civil cases in said court. The statement of facts reveals that at the outset of the hearing and before any evidence was offered the trial judge stated to counsel for the guardian that he doubted that he would change the order of the probate judge. "I'll tell you right now, I'll be very reluctant to change it," stated the judge. After hearing a portion of the testimony of the guardian concerning her income from personal investments, both savings account and income from rental property and before petitioner had rested or closed, the trial judge said:

"THE COURT: I intend to sign an order that for one year there will be no application entertained *in any court of the State of Texas* to invade the corpus of this property, not one penny." (Emphasis supplied.)

Following that we find the following colloquy between counsel and the court:

"MR. MATTAY: But, if she had— would it mean she would have to sell her property, in other words, and go broke before these children can get their support?

"THE COURT: Absolutely, and I want that in the record that I stated that she would have to sell the house and spend all that money on these children and have to spend the twenty thousand dollars that she has up there in the savings account on these children before I will allow her to have one penny and I further make an order and *I now enter the order that no court in the State of Texas is to entertain but is to dismiss, forthwith, any further application to invade the corpus or to get interest or to get one penny from these trust estates of these five children.*" (Emphasis supplied.)

Again, the court said:

"Please prepare an order along that line, I want this thing quieted for a year and *I don't want any court in the State of Texas to entertain any applications and I'm going to make a docket entry that the application is denied and that it is not to be considered by any court for any purpose for one year.*" (Emphasis supplied.)

Again the court said:

"THE COURT: Now, I hope I got it all, but if I didn't, I incorporate, in addition, whatever else I said orally from the bench, but my docket notation reads, 'December the eighth, 1967—I'll let you have this, and you can write it down—the motion and application of Marlene Kaufman Brooks is denied. No further application is to be made in this matter for one year. This estate is to be in peace and at rest and quiet for one year. These funds are frozen as to principal and interest for one year with no withdrawals to be permitted.' "

By her first point on appeal the guardian challenges the jurisdiction of the district court to order that "no court in the State of Texas is to entertain, but is to dismiss, forthwith, any further application to invade the corpus or to get interest or to get one penny from these trust estates of these five children," or to direct that no application is to be made to any court in the State of Texas within one year.

It is to be observed that the district judge did not retain the case on his trial docket but rendered a final judgment providing, inter alia, that:

"It is further Ordered that a certified copy of judgment shall be forthwith transmitted by the Clerk of this Court to the Clerk of the Dallas County Probate Clerk for observance by the Probate Court of Dallas County, Texas pursuant to Rule 338, Texas Rules of Civil Procedure: to which rulings Guardian through her attorney duly excepted and gave notice of appeal."

We agree with appellant guardian that the trial court exceeded his authority and jurisdiction in issuing the edict from the bench that no court in the State of Texas is to entertain but is to dismiss, forthwith, any further application concerning this estate. The district court's jurisdiction over probate proceedings is appellate only. Dunaway v. Easter, 133 Tex. 309, 129 S.W.2d 286 (Tex.Com.App.1939, opinion adopted by S.Ct.). The issues on appeal to the district court are confined to those made in the probate court. Myers v. Spharler, 370 S.W.2d 239 (Tex.Civ.App., Texarkana 1963, writ ref'd n.r.e.). The mandate of the trial judge that "no court in the State of Texas" is to take any action in this matter for a period of one year is obviously void and of no force and effect. While the language of the court is broad and all-inclusive we feel reasonably sure that the judge intended to restrict the order to the Probate Court of Dallas County, Texas, where the administration of the estates of the minors is pending. Even with this interpretation we find no basis of justification for authority of the court to render such an order which has the effect of limiting the power of the probate court. Appellant's first point is sustained.

By her second and third points of error the guardian contends that the order of the trial court restricting and freezing the guardianship funds for a period of one year is improper because such order would prevent the use of guardianship funds in cases of emergency or of the needs of the wards during the period of the year, and also prevents payment of administrative fees authorized by the Probate Code. Again, we agree with appellant. The basic purpose of guardianship under our law is to protect the interests of the minor and to provide for his care, welfare, education, maintenance and support. Art. V, Sec. 16, of the Constitution of the State of Texas, Vernon's Ann.St., and Sec. 4, Probate Code of Texas, extend to the county (probate) court general jurisdiction over matters of guardianship. The rights and duties of a guardian are statutory. Sec. 230(b), Probate Code of Texas; In re Guardianship of Estate of Neal, 406 S.W. 2d 496 (Tex.Civ.App., Houston 1966). In the very nature of things emergencies such as illness, accidents, and services of physicians must be anticipated. The law is well settled that the guardian may expend money out of the estate without an order of the court for support and maintenance of his ward in cases of emergencies. Pemberton v. Leatherwood, 218 S.W.2d 500 (Tex.Civ.App., Eastland 1949); Jones v. Parker, 67 Tex. 76, 3 S.W. 222 (1886). The action of the district court has the effect of closing the door to any expenditure for these essential items which may present themselves during the course of one year. Thus the guardian is prevented effectively from performing her statutory duties of caring for her wards in cases of emergency. Moreover, the probate court is effectively prevented from performing its statutory duty for a period of one year as to the supervision of the guardianship estate in allowing or ordering guardianship funds to be withdrawn for such essential items that may be incurred by emergencies. The same thing may be said for the payment of administrative expenses which are provided by law. The guardian is legally charged with the management and control of the estate of his ward. If he fails in this regard he may be held responsible under his bond. Certainly one of the functions of the guardian is to see that the costs of the administration are promptly paid.

In her points 4, 5 and 6 appellant guardian complains of the action of the court in holding that the court costs involved in the guardianship "will be charged against the Government" and also in freezing guardianship funds for one year because such action effectively prevents the guardian from paying accrued and other court costs due as authorized by law.

The trial court, when asked concerning the provision for payment of costs, said:

"Now, let me tell you this about court costs. Until I stop reading in the Dallas newspapers every six months about how our County Clerk has made so-many hundred thousand dollars by court costs and that our District Clerk has made for the County of Dallas so-many hundred thousand dollars by court costs, then I'll start worrying about when the County Clerk and the District Clerk can collect money for court costs and I'll sign an order in this case that these kids are not to be charged with any court costs, whatsoever. *It will be charged against the Government.* So, don't talk to me, any more, about court costs." (Emphasis supplied.)

The order of the court made no provision for the payment of accrued court costs or costs of the proceedings in the district court. That court costs are necessarily incurred in connection with guardianship proceedings and are proper administrative expenses cannot be denied. There is nothing in this record to indicate a reason why the ordinary cost of administration of the estates should not be charged against the estates of the minors. While it is true that Rule 141, T.R.C.P., provides that the court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these

rules, yet we find no provision in the law, statutory or otherwise, justifying the assessment of costs against the "Government". This is especially true where the evidence reveals that the estates of the minors consist of substantial funds from which necessary costs of administration could be paid from the interest drawn therefrom without encroaching upon the corpus thereof. We think the court's action in not specifying the assessment of costs against the estates of the minors was without justification and that his statement from the bench that the costs would be assessed against the "Government" is without force and effect. Appellant's points 4, 5 and 6 are sustained.

By points 7 and 8 appellant guardian complains of the action of the trial court in refusing to allow her to pay for the guardianship bond premium out of guardianship funds. During the trial the court was asked about the payment of the guardian bond premium whereupon he replied:

"* * * let her go ahead and spend it herself and after a year make application to be reimbursed thirty dollars and I might allow it, but I might not. * * * she has to spend some of her money, thirty dollars, for her bond premium, and after a year she can make application and I'll consider whether I will allow it as an expense item chargeable against these trust estates."

The law requires a guardian to post a bond. Sec. 194, Probate Code of Texas. The bond filed in this case was one with corporate sureties and the estate exceeds the sum of $50,000. Sec. 194, Par. 11, Texas Probate Code, expressly provides that "[t]he estate shall pay the cost of a bond with corporate sureties."

The action on the part of the trial judge in requiring the guardian to pay for the corporate guardianship bond out of her own funds, and then after a year to make application to him to be reimbursed therefor, is an effort on the part of the judge to retain jurisdiction of a part of the case. We find no authority in law for this procedure. No provision is made in the law for the retention by the district judge of supervisory jurisdiction over details of the guardianship as was here expressed by the court.

Appellant's point 9 presents a question of the error of the trial court in failing to set and authorize the guardian to pay a reasonable attorney's fee. The probate court allowed the attorney a fee of $250. The district court's judgment makes no provision for allowance of fees. The judge indicated that he "might" allow attorney's fees out of interest to be accrued from the minors' estates "in the future." Sec. 242 of the Texas Probate Code expressly authorizes the payment of all reasonable attorney's fees necessarily incurred in connection with the proceedings and management of the estate. Such fees incurred for services to the estate are of administrative nature and allowable as such. Legler v. Legler, 189 S.W.2d 505 (Tex.Civ.App., Austin 1945); Armstrong v. Anderson, 55 S.W.2d 235 (Tex. Civ.App., El Paso 1932); 27 Tex.Jur.2d, § 294, p. 565. We think the trial court was in error in refusing to pass upon and award reasonable attorney's fees.

We are also of the opinion that the trial court erred in freezing the guardianship account for one year which effectively precluded the guardian from collecting her commission as provided by law. When asked concerning the allowance of the guardian's commission the court stated that such matter was within his discretion.

Sec. 241(b), Texas Probate Code, expressly provides that the guardian of the estate shall be entitled to a specified commission for acting in such capacity. We find no decisions to the effect that the court is vested with discretion in such matter. On the contrary the cases hold that the court would be in error in not allowing the statutory commission. Legler

v. Legler, 189 S.W.2d 505 (Tex.Civ.App., Austin 1945); Pemberton v. Leatherwood, 218 S.W.2d 500 (Tex.Civ.App., Eastland 1949); and Moroney v. Moroney, 286 S.W. 167 (Tex.Com.App. 1926). Accordingly, we hold that the trial court was in error in refusing to grant the guardian the commissions prayed for.

■ In her point 11 the appellant guardian contends that under the law she is authorized to pay administrative costs as well as support and education of the wards out of the interest or increase of the wards' estates but that the court's action in freezing the funds for a period of one year will effectively prevent her from doing this. Sec. 236(a), Texas Probate Code, provides that for the education and maintenance of the ward the guardian shall not be allowed more than the net income of the estate. The court may direct the guardian of the person to expend, for the education and maintenance of his ward, a sum in excess of the income of the ward's estate but this must be. done upon express authorization.

"A guardian has a right to expend all of the net income of the ward's estate for the ward's support and maintenance and is under no duty to apply to the court for an order for such expenditures." 27 Tex.Jur.2d, Guardian and Ward, § 128, pp. 448–449; Pemberton v. Leatherwood, 218 S.W.2d 500 (Tex.Civ.App., Eastland 1949, writ ref'd n. r. e.); Blackwood v. Blackwood's Estate, 92 Tex. 478, 49 S.W. 1045 (1899); Legler v. Legler, 189 S.W.2d 505 (Tex.Civ.App., Austin 1945).

The action of the trial court in freezing the entire estate of the minors, including the corpus as well as the accrued income therefrom, for a period of a year, has effectively deprived the guardian of her right to expend the income from such estates for the purposes specifically allowed by law. Point 11 is sustained.

■ In her points 12 and 13 the guardian asserts that the trial court abused

his discretion in refusing to permit the guardian to invade the corpus of the estates of the minors for their care, support, maintenance and education on the ground that the guardian was financially able to support and maintain her children out of her own funds. Sec. 236 of the Texas Probate Code is express in its statement that the court may direct the guardian of the person to expend, for the education and maintenance of his ward, a sum in excess of the income of the ward's estate. It is unquestioned in the law that such expenditure may not be made without an express order of the court. Such order will not be made by the court without hearing the evidence and giving due consideration to the financial condition of the natural parent acting as guardian. From time immemorial it has been the law in Texas that the surviving parent and natural guardian is bound by the obligations, both of law and morality, to care for, support and educate his or her children at his or her own expense. It is only when the natural parent is not able to do so that an allowance for such purpose will be made out of the estate of his ward. Buckley's Administrator v. Howard et ux., 35 Tex. 565, 566 (1871); Kendrick et al. v. Wheeler et al., 85 Tex. 247, 20 S.W. 44 (1892); American General Ins. Co. v. Nance, 60 S.W.2d 280 (Tex.Civ.App., Dallas 1933, writ ref'd); Empire Mortgage Co. v. McFarland, 84 S.W.2d 892 (Tex.Civ.App., Fort Worth 1935); and Ross v. United States, 348 F.2d 577 (U.S. Ct. of Appeals, 5th Cir. 1965).

■ The trial court obviously possesses the discretion to decide the question of the right of the surviving parent and natural guardian to invade the corpus of the ward's estate for the care, maintenance and education of the ward. Such exercise of discretion must, in the very nature of things, be based upon the record before the court. Our review of this record leads us to the conclusion that the testimony on the question of the financial

ability of the natural mother to support the children, without securing from the court an order allowing her to remove funds from the corpus of the wards' estates, is not sufficiently developed. While the surviving mother and guardian was on the witness stand and before she had completed her testimony, and before her attorney had closed his case, the court announced his decision. Since the case will have to be reversed for another trial, for the reasons hereinabove stated, we will not at this time express an opinion concerning the sufficiency of the evidence to support the court's finding.

For the reasons assigned the judgment of the trial court is reversed and remanded for another trial not inconsistent with this opinion.

Reversed and remanded.